## No. 8289.

### THE STATE OF LOUISIANA VS. JOHN McNEIL.

The deposition of a witness taken at the inquest before the Coroner, is admissible in evidence, in behalf of the accused, on the trial of the case, when the witness has died since the inquest.

APPEAL from the Criminal District Court for the parish of Orleans. *Roman,* J.

---

*J. C. Egan,* Attorney General, for the State, Appellee :

First—A juror is competent to serve where he has only an impression, and not a fixed and deliberate opinion as to the guilt or innocence of the accused. 33 An. 1101 : 14 An. 462; 22 An. 43 ; 23 An. 148

Second—The testimony of witnesses given before the coroner's jury is inadmissible in evidence on the trial of a case.

Third—The evidence before the coroner's jury is admitted for a restrictive purpose—to prove death, but nothing further. 7 An. 84; 10 An. 456.

*Whitaker & Adams* for Defendant and Appellant :

Where the juror entertains a preconceived opinion, the only matter at issue in determining the question of competency, is the actual condition of his mind, with respect to the case, at the time that he is tendered to the accused. A juror is disqualified, if his mind be not free from prejudice and bias—if he do not stand indifferent between the State and the accused—or if, because of anything that may operate upon the juror's mind, for the purposes of the trial, the accused be at a disadvantage. Record, pp. 10 and 11 ; 32 An. 1098; 1 Archb. Pr. and Pl. 550, 626 ; 2 Smith. (N. Y.) 501 ; 13 Sm. and M., 189 ; 11 Leigh, 657 ; 5 Cal., 347. See Morris's State Cases, 511-513 ; Ib. 920.

First—The duties of coroners, in England, with respect to the taking and return of depositions upon any inquisition for murder or manslaughter, before 1805 and at that time, were substantially the same as those required of coroners here, in Louisiana. 2 Hawk., c. 46, §§ 13 and 15 ; 1 and 2 Philip and Mary, c. 13, § 5 ; R. S., 1870, §§ 651, 661, 662, 664, 665 ; 7 An. 84.

Second—In this State, the method of trial, rules of evidence, and all other proceedings in the prosecution of crimes, must be according to the common law of England as it existed in 1805, unless otherwise provided. Acts of 1805 and 1855; R. S., § 976 ; 8 R. 545 ; 30 An. 847.

Third—Unlike depositions taken before a magistrate, those taken before a coroner do not depend for admissibility upon the right of cross-examination. On the contrary, depositions so taken before the coroner are said to be evidence even though the party accused be not present. And such was the English law in 1805. 1 Bish. on Cr. Proc. §§ 1093, 1094, 1096 ; Archbold's Pl. and Ev. 13th, Lond, Ed., 213, 214 ; 2 Hawk. ch. 46, §§ 13 and 15 ; 2 Hale's P. C., 284 ; Peake's Ev., 64 and n.; Gilbert on Ev., 138 ; 8 Cox C. C. 443 ; 2 Leach C. C. 770 ; 2

State of Louisiana vs. McNeil.

Starkie's R. 208, 211; Bull. N. P. 242; 3 T. R. 707, 713; Harrison's case, 12 St. Tr. 853; Lord Morley's case, Kelynge 55; 2 Jones 53; Salkeld 281; 2 Keble 19; 1 St. Tr. 265. See, also, remarks of Lord Kenyon and Buller, J., in R. v. Eriswell, 3 T. R., 713.

Fourth—The cases of State vs. Parker, 7 An. 84, and State vs. Johnson and Melville, 10 An. 457, are not in point. The question is not whether a person accused of a crime has the right to meet the witnesses face to face, but whether depositions regularly taken before the coroner are admissible in evidence upon proof of the death of the witness.

Fifth—If the accused cannot object to depositions thus taken and returned, by what right can the State, whose officer has summoned the witnesses and returned their testimony, in the manner prescribed by its law, oppose the receiving in evidence of such depositions, upon proof of the death of the informer?

The opinion of the Court was delivered by

TODD, J. The defendant was tried for murder and convicted of manslaughter. From the sentence imposing a fine of fifty dollars, and condemning him to five years imprisonment at hard labor in the penitentiary, he has appealed.

On the trial of the cause, the defendant offered in evidence the deposition of Michael Mallory, taken before the coroner upon an inquisition as to the cause and manner of the death of Augustus Burke, whom the accused was charged to have murdered—Mallory having died after his deposition was taken and before the trial of the accused.

The District Attorney objected to the admissibility of the evidence, upon the following grounds appearing in the bill of exceptions:

"That the proceedings before the coroner's inquest are *ex parte* proceedings, and cannot be raised to the dignity or authority of an examination before a court of justice. The State no more than the defence, the defence no more than the State, is entitled to make use of any such testimony or written deposition before the trial court."

This objection was sustained and the evidence rejected—to which ruling the defendant by his counsel excepted, and retained his bill, making the rejected deposition a part thereof, which comes up with the record.

The question to be determined is, whether this ruling was correct or not.

In this State, the forms of indictment, the method of trial, *rules of evidence*, and all other proceedings in the prosecution of crimes, must be according to the common law of England, as it existed in 1805, unless otherwise provided. Acts of 1805, R. S. 1870, Sec. 976; 8 R. 945; 30 An. 847.

If, under the common law as it existed at that period (1805), the testimony in question was admissible, it must be so still, unless its admissibility is controlled by some constitutional provision or subsequent statutory enactment.

The law in England and this country, relating to depositions taken

before coroners, as to the manner of taking and the effect given them, and the purposes for which they could be used or applied, at and before the time mentioned (1805), is embraced and contained in the Act known as 1 and 2 Phil. & M., c. 13, Sec. 5, A. D. 1854.

This statute remained in full force in England until its provisions were to some extent modified, first by the statute 7 Geo. 4, c. 64, and afterwards by the 11 & 12 Vict., c. 42, passed long subsequent to 1805.

Archbold, commenting on these statutes, says: "Although the former statutes (Phil. & M.) did not contain any express enactment like the above (11 & 12 Vict.), it was yet determined in many cases and recognized as a rule of law, that, in all cases of felony under these statutes, where they were taken in presence of the accused, and he had an opportunity of cross-examining them, the deposition of any such witness might be read in evidence against the accused on trial in case the person who made the deposition were dead." Archbold Pl. & Ev., 13 Lond. Ed., 213, 214.

"Distinction whether taken before justice or coroner. In this respect there is a difference between depositions taken before a magistrate and before a coroner, for the latter are said to be evidence, even though the party accused be not present. The reason given for this exception is, that the coroner is an elective officer appointed on behalf of the public to make inquiry of matters within his jurisdiction, who is therefore presumed to take the depositions fairly and impartially." 1 Bishop Crim. Pro.; ¿ 1094; Ball N. S. 242; 2 Phil. Ev. 91.

We read from Bishop on same subject: "How. in United States." "Such being the English law, and the two statutes of Philip & Mary being common law with us, the practitioner, by consulting the statute book of his own State, may readily determine how the matter stands there. The principle on which these depositions are, under statutes like those which prevailed in England down to a recent period, admissible, is, that being regularly taken under provisions of law, the common law accepts them, when it is impossible the personal presence of the witness can be had." 1 Bish. Crim. Pro., 1096; Rex vs. Smith, 2 Sharkie, 208, 211.

The counsel for the State urges in his brief two considerations opposed to the admissibility of this evidence, the last of which particularly is not embodied in the objection made to the admissibility of the evidence on the trial.

The first is, that the powers of coroners, under our State laws, are not as extensive as under the ancient common law of England, and the same effect cannot be given to depositions taken under their authority; and the second is, that the question of their admissibility in trials before

petit juries is controlled by the constitutional provision guaranteeing the right of an accused to be confronted by the witnesses.

In regard to the first suggestion, it is true that coroners, at the present day, do not possess the powers with which those officers were anciently clothed by the common law; and the office of coroner is now of less dignity and importance than formerly under the English system; but, nevertheless, their functions, as bearing on the question at issue, under the laws of England, were very much the same as now exist under our own laws. Thus coroners are declared conservators of the peace. Revised Statutes, 651. They are required to hold inquests over the bodies of those known or suspected of having met violent deaths; to summon juries of inquest and to swear them, " to diligently inquire and true presentment make on the part of the State when and by what means the person came to his death;" to swear witnesses and reduce their depositions to writing; to take recognizance for their appearance at court, to return the inquisition into court, and to arrest the person or persons charged by the inquest with the commission of an offense. Revised Statutes, 655, 657, 660, 661, 664, 665.

These duties, it must be admitted, are very similar to those prescribed by the ancient statutes of England referred to ; as will plainly appear from an inspection of them.

In regard to the second—the constitutional objection—urged, it is sufficient to say that, whilst it may operate to the exclusion of such testimony when offered by the State and the objection in question is urged by the accused, it is not applicable when the same testimony is offered by the accused himself. The constitutional provision mentioned was intended and designed to afford a protection to the accused,—to guarantee him against the testimony of witnesses whom he had no opportunity to cross-examine, and whom, perhaps, he had never seen. It is a privilege granted him, but a privilege in his favor which he may waive ; and this has been expressly ruled. State vs. Hornsby, 8 R. 554; State vs. Palson, 29 Iowa,133.

We know of no statutory provision in this State changing the ancient common law rule with respect to such evidence.

From these considerations, we conclude that the evidence in question was improperly rejected ; and in reaching this conclusion, we are governed, to some extent, by the character and wording of the objection made at the time to its admission, which we have reported above. That objection, under our view of the law, was certainly untenable and insufficient to exclude it.

Although we cannot fully judge of the character and probable effect of the excluded testimony, we are satisfied that it was an error com-

mitted to the prejudice of the accused, of which he may justly complain, and requires us to remand the case.

From the views expressed it becomes unnecessary to pass on another. bill of exceptions in the record, touching the competency of one of the jurors who tried the case.

It is, therefore, ordered, adjudged and decreed that the sentence and verdict appealed from are annulled, avoided and reversed, and the cause remanded to the lower court, to be proceeded with according to law, and the views herein expressed.